RECORD NO. 15-6943(L)
CONSOLIDATED W/15-6944

IN THE

# United States Court of Appeals
## FOR THE FOURTH CIRCUIT

———————————

DEWAYNE JACKSON COX, a/k/a Dwayne Cox,

*Plaintiff - Appellee,*

v.

OFFICER BRADLEY QUINN; OFFICER JOSHUA PINKERMAN;
OFFICER BENJAMIN BAXLEY; JUSTIN MILES,

*Defendants-Appellants.*

———————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
AT ROANOKE

———————————

**CONSOLIDATED OPENING BRIEF OF APPELLANTS**

———————————

Jim H. Guynn, Jr.
GUYNN & WADDELL, P.C.
415 South College Avenue
Salem, Virginia 24153
(540) 387-2320 Phone
(540) 389-2350 Facsimile
jimg@guynnwaddell.com

*Counsel for Appellants*
*Officer Bradley Quinn;*
*Officer Joshua Pinkerman*
*and Officer Benjamin Baxley*

Christopher C. Newton
John C. Johnson
FRITH, ANDERSON
& PEAKE, P.C.
29  Franklin Road, S.W.
Roanoke, Virginia 24001
(540) 772-4600 Phone
(540) 772-9167 Facsimile
cnewton@faplawfirm.com
jjohnson@faplawfirm.com

*Counsel for Appellant*
*Justin Miles*

LANTAGNE LEGAL PRINTING 801 East Main Street Suite 100 Richmond, Virginia  23219 (804) 644-0477
A Division of Lantagne Duplicating Services

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-6943__        Caption: __Dewayne Cox v. Bradley Quinn__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Bradley Quinn__
(name of party/amicus)

_____

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐ YES ☑ NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐ YES ☑ NO
      If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐ YES ☑ NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____        Date: _____7/1/15_____

Counsel for: Bradley Quinn _____

## CERTIFICATE OF SERVICE
***************************

I certify that on _____7/1/15_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____        _____7/1/15_____
      (signature)                                        (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __15-6943__        Caption: __Dewayne Cox v. Bradley Quinn__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Joshua Pinkerman__
(name of party/amicus)

_____

who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
      If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____ 7/1/15 _____

Counsel for: Joshua Pinkerman

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ 7/1/15 _____ the foregoing document was served on all parties or their
counsel of record through the CM/ECF system if they are registered users or, if they are not, by
serving a true and correct copy at the addresses listed below:

_____                      _____ 7/1/15 _____
      (signature)                                        (date)

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No.  15-6943          Caption:  Dewayne Cox v. Bradley Quinn

Pursuant to FRAP 26.1 and Local Rule 26.1,

Benjamin Baxley
(name of party/amicus)


who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                      ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _____    Date: _____7/1/15_____

Counsel for: Benjamin Baxley

## CERTIFICATE OF SERVICE
****************************

I certify that on _____7/1/15_____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____        _____7/1/15_____
(signature)                              (date)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-6943          Caption: COX v. OFFICER BRADLEY QUINN, et al.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Justin Miles
(name of party/amicus)

who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                           ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                              ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
If yes, identify any trustee and the members of any creditors' committee:

Signature:  _CC Newton_____    Date:  ____7/1/2015____

Counsel for:  _Defendant Justin Miles_____

## CERTIFICATE OF SERVICE
****************************

I certify that on ____7/1/2015____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_CC Newton_____             ____7/1/2015____
(signature)                                    (date)

- 2 -

# TABLE OF CONTENTS

Page(s)

CORPORATE DISCLOSURE

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE JURISDICTION ................................................................1

STATEMENT OF ISSUE(S) PRESENTED FOR REVIEW .................................1

STATEMENT OF THE CASE.................................................................1

STATEMENT OF THE FACTS ..............................................................2

SUMMARY OF THE ARGUMENT .........................................................5

ARGUMENT AND AUTHORITIES........................................................6

      Standard of Review........................................................................6

Quinn, Pinkerman, and Baxley were entitled to qualified immunity and the
District Court erred in denying their motions for summary judgment....................7

Miles was also entitled to qualified immunity and the District Court erred in
denying his motion for summary judgment..............................................14

CONCLUSION ................................................................................18

REQUEST FOR ORAL ARGUMENT ....................................................18

CERTIFICATE OF COMPLIANCE......................................................20

CERTIFICATE OF SERVICE ..............................................................21

i

## TABLE OF AUTHORITIES

## CASES

**Page(s)**

Ausherman v. Bank of America Corp.,
    352 F.3d 896 (4th Cir. 2003) ......................................................6

Behrens v. Pelletier,
    516 U.S. 299 (1996).....................................................................1

Brown v. Harris,
    240 F.3d 383 (4th Cir. 2001) ...............................................11, 14

Canal Insurance Co. v. Distribution Services, Inc.,
    320 F.3d 488 (4th Cir. 2003) ......................................................6

Danser v. Stansberry,
    772 F.3d 340 (4th Cir. 2014) ......................................................7

Farmer v. Brennan,
    511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) ......7, 8, 9, 11, 12, 15

Grayson v. Peed,
    195 F.3d 692 (4th Cir. 1999) ......................................................7

Harlow v. Fitzgerald,
    457 U.S. 800 (1982).....................................................................7

Henry v. Purnell,
    652 F.3d 524 (4th Cir. 2011) ...............................................6, 7, 9

Makdessi v. Fields,
    789 F.3d 126 (4th Cir. 2015) ....................................................18

Mitchell v. Forsyth,
    472 U.S. 511 (1985).....................................................................1

Parrish v. Cleveland,
    372 F.3d 294 ..............................................................................14

Pearson v. Callahan,
    555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) ..............................7, 9

Prater v. Dahm,
    89 F.3d 538 (8th Cir. 1996) ...........................................................10, 11, 12, 13

Rich v. Bruce,
    129 F.3d 336 (4th Cir. 1997) .....................................................................13, 14

Saucier v. Katz,
    533 U.S. 194, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001) ..........................9, 16

**STATUTES**

28 U.S.C. § 1291 ................................................................................................1

28 U.S.C. § 1331 ................................................................................................1

28 U.S.C. § 1343(a)(3) .......................................................................................1

42 U.S.C. § 1983 ............................................................................................1, 6

**CONSTITUTION**

Const. amend VIII...............................................................................................10

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) as the appellee alleged violations of 42 U.S.C. § 1983.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291 under the collateral order doctrine and the reasoning of Behrens v. Pelletier, 516 U.S. 299 (1996), and Mitchell v. Forsyth, 472 U.S. 511 (1985).  This is an appeal from a final order denying Appellants' motions for summary judgment with regard to qualified immunity.  Appellants timely filed a notice of appeal.

## STATEMENT OF ISSUE(S) PRESENTED FOR REVIEW

Whether the District Court erred in denying Appellants' motions for summary judgment based on qualified immunity.

## STATEMENT OF THE CASE

Cox filed an Amended Complaint alleging among other claims that corrections officers (Miles, Quinn, Pinkerman, and Baxley) and supervisors (Winston, Keller, and Smith) at the Western Virginia Regional Jail violated his Eighth Amendment rights by failing to protect him from attack by fellow inmates. JA 35.  The parties engaged in full discovery.  Upon completion of discovery,

1

Defendants filed motions for summary judgment. JA 57, 315. Regarding this appeal, Defendants argued that Plaintiff failed to establish a violation of his Eighth Amendment rights and even if he did, the Defendants were protected from liability by qualified immunity.

The parties briefed the motions and the District Court heard oral argument. After oral argument, the District Court requested further briefing from the parties. On June 3, 2015, the District Court issued its opinion granting summary judgment on all counts to Winston, Keller, and Smith. The District Court granted summary judgment to Miles, Quinn, Pinkerman, and Baxley on all counts except the Eighth Amendment claim. JA 447, 469. Quinn, Pinkerman, and Baxley filed their notice of appeal of the denial of qualified immunity on June 15, 2015. Miles also filed his notice of appeal of the denial of qualified immunity on June 15, 2015. On June 17, 2015, the two appeals were consolidated into this appeal.

## STATEMENT OF THE FACTS

In April 2011, Cox was an inmate at the Western Virginia Regional Jail.[1] He was one of 52 inmates in Pod 3A. Cox was Caucasian, and in his early fifties.

---

[1] Unless otherwise noted by reference to certain parts of the Joint Appendix, this statement of facts is taken from the factual background in the District Court's opinion denying the motions for summary judgment based on qualified immunity.

2

JA 447. Harris, Cabell, Jackson, and Reddix were younger African American inmates whom Cox's fellow inmates referred to as a "clique." JA 448.

Miles worked at the Western Virginia Regional Jail from December 2010 until late September of 2011. He was an uncertified correctional officer during the entire time of his employment. JA 67-68, 73. JA 156. Miles left the jail prior to finishing the training academy that makes correctional officers certified correctional officers. JA 10; JA 156. After Miles was hired in December 2010, Miles went through an orientation process where he received keys, was shown around the jail, told about "do's and don'ts," told not to be in a housing unit alone, and told he had to be with a certified correctional officer or a field training officer [in the pod] unless inmates were locked inside their cells. JA 68-69, 83.

Miles' duties as a non-certified officer were, amongst other things, to record pertinent information in a daily log book, answer telephones, assist certified officers in the control room and pods to supervise inmates, and work with field training officers and certified officers to obtain on-the-job experience on a variety of issues. JA 156. As a non-certified officer, Miles had no authority to carry mace, be around inmates by himself, move inmates throughout the jail on his own, and make housing moves and/or decisions concerning inmates. JA 157.

There was friction between Cox and the clique and he alleges that he requested to be moved out of the pod prior to April 11, 2011. JA 448. On April

11, 2011, Miles worked the pod with Quinn and Baxley. Quinn and Baxley were certified correctional officers. JA 72. Cox approached Miles in the morning around 9:00 or 9:30 and asked him what the officers were going to do about what was going on in the pod. While Cox and Miles discussed the issue, Quinn arrived and Miles asked Cox to repeat to Quinn what Cox had just told Miles. Baxley arrived soon afterward and Pinkerman approached and was informed of the situation. JA 450. Miles and the correctional officers directed Cox to return to his cell and told him that they would talk to the other inmates when they returned from the recreation area. Cox told the officers not to talk to the other inmates because it would make the situation worse. Miles called his supervisor, Sergeant Smith, over the radio, to notify Sergeant Smith there was an issue in the pod and to inquire as to what Sergeant Smith wanted the officers to do. JA 451.

Cox returned to the pod. He noticed that Harris, Cabell, and Jackson did not come back to the pod with the rest of inmates but instead returned five or six minutes later. JA 452. During the five or six minute delay, the officers spoke with Cabell, Jackson, and Harris and the inmates told the officers that they would stay to themselves if others stayed to themselves. JA 373-74. After the conversation, Quinn felt there was nothing going on and that everything would be alright. JA 376. Miles' impression was that everything was fine and things would be back to

4

normal again in the pod. JA 114. Upon their return, Harris, Cabell, and Jackson began yelling at Cox, calling him a snitch.  JA 453.

After the officers spoke to the involved inmates, Miles did walk-throughs in the pod and did not notice anything he perceived as a danger. JA 114. At dinner, Cox testified he approached Miles and stated he was being threatened and wanted out of the pod, but that Miles threw his hands in the air and walked away.  JA 452. Later on the evening of April 11, 2011, Reddix, a member of the clique with whom Cox had not previously had conflict, attacked Cox.  Cox suffered broken ribs, a loosened tooth, bruising, swelling, and abrasions as a result of the incident.  JA 453.

## SUMMARY OF ARGUMENT

The District Court erred in its analysis of qualified immunity.  The District Court erred in determining that there was a genuine dispute of fact whether Miles, Quinn, Pinkerman, and Baxley acted with deliberate indifference to a substantial risk of serious harm to Cox.  There was no direct or circumstantial evidence of subjective intent on the part of Miles, Quinn, Pinkerman, and Baxley.  The District Court completely overlooked the undisputed fact that the officers responded to Cox's complaints by raising them through the supervisory chain and discussing them with members of the clique.  Finally, the District Court's analysis of the

5

"clearly established" prong of qualified immunity was too general.  The District Court should have focused on whether a reasonable officer would have acted similarly under the same circumstances.  If the District Court had applied the correct analysis, it would have granted summary judgment to Miles, Quinn, Pinkerman, and Baxley on the basis of qualified immunity.

## ARGUMENT AND AUTHORITIES

### Standard of review.

This appeal arises from the District Court's denial of summary judgment to Miles, Quinn, Pinkerman, and Baxley with regard to Plaintiff's claims under 42 U.S.C. § 1983.  Whether a party is entitled to summary judgment is a question of law this Court reviews *de novo* using the same standard applied by the District Court.  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011), citing Canal Insurance Co. v. Distribution Services, Inc., 320 F.3d 488, 491 (4th Cir. 2003).  Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, "no material facts are disputed and the moving party is entitled to judgment as a matter of law."  Id., citing Ausherman v. Bank of America Corp., 352 F.3d 896, 899 (4th Cir. 2003).

**<u>Quinn, Pinkerman, and Baxley were entitled to qualified immunity and the District Court erred in denying their motions for summary judgment.</u>**

Government officials "performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). In <u>Henry</u>, this Court followed <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009), and exercised its "discretion to use the two-step procedure of <u>Saucier</u>, that asks first whether a constitutional violation occurred and second whether the right violated was clearly established." <u>Henry v. Purnell</u>, 652 F.3d 524, 531 (4th Cir. 2011).

In a failure to protect claim under the Eighth Amendment, a prisoner must show that he suffered an objectively serious injury and that prison officials acted with deliberate indifference in protecting him from the injury. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Deliberate indifference is a very high standard that cannot be met by a showing of mere negligence. <u>Grayson v. Peed</u>, 195 F.3d 692, 695 (4th Cir. 1999). It is a subjective standard which requires a plaintiff to prove that the correctional officer had actual knowledge of an excessive risk to his safety. <u>Danser v. Stansberry</u>, 772 F.3d 340, 347 (4th Cir. 2014). The correctional official "must be aware of facts from which

7

the inference could be drawn that a substantial risk of harm exists and he must also draw the inference." <u>Farmer</u>, 511 U.S. at 837.

The District Court erred in analyzing the constitutional violation prong of the qualified immunity test. The District Court assumed that the only response that was constitutionally reasonable was removal of Cox from the pod. "[T]hese defendants knowingly disregarded that risk by failing to remove Cox from the pod after he reported being threatened . . . ." While the goal of the officers is to avoid physical harm to Cox, there is no guarantee of his safety. There is no evidence, expert or otherwise, that the only reasonable response is removal of a threatened inmate from a pod or cell. No court has adopted removal as the standard, rendering all other responses deliberately indifferent. The District Court did not address the undisputed fact that Quinn, Pinkerman, and Baxley addressed Cox's complaints with those he identified as his tormenters and concluded that Cox was not threatened. Accordingly, there was no evidence, direct or circumstantial, that the Defendants believed Cox was under threat after they spoke with members of the clique. The clique members assured Quinn, Pinkerman, and Baxley that there would be no trouble. Cox failed to present any contrary evidence that the Defendants knew of and disregarded an excessive risk to Cox. In these circumstances, there was no reasonable basis for the inferences the District Court relied on. After hearing from the clique, the officers concluded there was no

8

threat. They did not draw the inference.  The District Court erred in finding that Cox raised a jury question that Quinn, Pinkerman, and Baxley drew the inference required by <u>Farmer</u>.

Qualified immunity protects officers who commit constitutional violations but who, in light of clearly established law, could reasonably believe that their actions were lawful.  <u>Henry v. Purnell</u>, 652 F.3d 524, 530 (4th Cir. 2011), citing <u>Saucier v. Katz</u>, 533 U.S. 194, 206, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), overruled in part, <u>Pearson v. Callahan</u>, 555 U.S. 223, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009).  Even if the District Court correctly found a constitutional violation, it erred when it applied the second prong of the <u>Saucier</u> test.  Although phrased many ways, the essence of the "clearly established" prong is whether a reasonable officer under the same circumstances would have understood that he was violating the plaintiff's constitutional rights. The District Court cited the general Eighth Amendment standard but failed to apply it specifically to the issue in this case.  It found that "it was clearly established that correctional officers have a duty 'to protect prisoners from violence at the hands of other prisoners.'"  The correct inquiry was whether or not a reasonable officer under the same circumstances would have believed that interceding and discussing the matter with the allegedly threatening prisoners violated Cox's constitutional rights, not whether a reasonable officer knew he had to protect prisoners from violence.  There was no evidence

from Cox contradicting Quinn's testimony about the discussion with Harris and Cabell.  Yet the District Court never considered it.

The question remains, would Pinkerman, Baxley, and Quinn, as reasonable corrections officers, have believed that discussing the matter with Harris and Cabell was not a violation of Cox's constitutional rights?  Courts are yet to set forth a bright line definition of deliberate indifference in Eighth Amendment jurisprudence. Rather, courts tend to analyze the facts of individual cases and determine whether the officers' response passed constitutional muster.  For that reason, Pinkerman, Baxley, and Quinn should have been able to rely on prior decisions to determine what responses courts previously found to fall within actions a reasonable officer would have taken under the same or similar circumstances.  The District Court failed to perform that analysis.

In Prater v. Dahm, 89 F.3d 538 (8th Cir. 1996), prison officials housed inmates Prater and Penn in the same facility with the knowledge that Prater had a relationship with Penn's wife.  Prior to transferring Penn to the institution where Prater was housed, prison officials asked Prater if there would be a problem with Penn.  Prater said he would have no problem.  Upon arrival, Penn immediately threatened Prater.  The deputy warden spoke with Penn who assured there would be no further problems.  Later, Penn assaulted Prater.

10

Prater filed suit and the defendants raised the defense of qualified immunity. In analyzing qualified immunity, the Court considered whether Prater had established a constitutional violation.  Applying the <u>Farmer</u> standard, the Court considered the objective and subjective prongs of an Eighth Amendment violation. "Although it is a close question, we assume without deciding that Prater's incarceration with Penn resulted in a serious deprivation of protection, and thus that Prater could establish the objective prong of the constitutional right."  89 F.3d at 541.  The Court cited the familiar formulation of the subjective prong of the <u>Farmer</u> test.  An official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists and the defendant must also draw the inference.  <u>Id</u>.  "Moreover, even if the prison officials actually know of a substantial risk to inmate health or safety, the officials may nevertheless escape liability if they respond reasonably to the risk even if the harm ultimately was not averted."  <u>Id</u>.[2]

The Court discounted Prater's evidence alleging that he was threatened by Penn because "threats between inmates are common and do not, under all

---

[2] An official "who actually knows of a substantial risk to inmate health or safety may be found free from liability if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  <u>Brown v. Harris</u>, 240 F.3d 383, 389 (4th Cir. 2001), citing <u>Farmer</u>, 511 U.S. at 844.  This "reasonable response" prong of <u>Farmer</u> protects officials who act reasonably in response to a known risk.  <u>Id</u>.  It should have protected Quinn, Pinkerman, and Baxley in this case.

circumstances, serve to impute actual knowledge of a substantial risk of harm." Id. Prater admitted that the prison officials had assurances from both inmates that there would be no trouble. Prater did not dispute that despite the threats he and Penn were incarcerated together for two weeks without incident. The Court also recognized that there was no evidence on which a reasonable fact finder could conclude that the officials responded unreasonably to the risk. Citing reliance on the assurances of Prater and Penn that there would be no further problem, the facts did not create a material issue of fact as to whether the prison officials acted unreasonably in responding to the tensions between Prater and Penn. Id. at 542.

The circumstances in Prater v. Dahm are similar to the undisputed facts in this case. Faced with tensions between inmates, the prison officials in Prater and this case received assurances that there would be no trouble. Cox allegedly reported threats weeks before the assault and, as in Prater, he co-existed with the clique for a substantial period of time without incident. JA 448. Based on Prater, Quinn, Pinkerman, and Baxley would have believed that reasonable officers under the same circumstances would take the actions they took. The District Court erred in failing to find that Quinn, Pinkerman, and Baxley were protected from liability by qualified immunity under these circumstances.

The District Court failed to recognize that Quinn, Pinkerman, and Baxley had to make a choice between the alleged threats against Cox and statements by

those who allegedly threatened Cox that there would be no problem. In making that choice, the officers accepted the assurances of members of the clique. In hindsight, Cox was attacked but not by the inmates who assured the officers there would be no problem. Inherent in the District Court's opinion is the belief that the defendants made a poor choice. In <u>Rich v. Bruce</u>, 129 F.3d 336 (4th Cir. 1997), this Court reversed the district court finding of deliberate indifference based upon the district court's conclusion that the corrections officer engaged in active negligence and deliberate violations of rules and regulations and was stupid, lazy, inattentive, tired and burned out. If behavior described as stupid, lazy, and inattentive is not deliberately indifferent, Defendants' decision to investigate Plaintiff's allegations in this case cannot constitute deliberate indifference. Cox's admission that Defendants investigated his claims precludes a finding of deliberate indifference.

In light of <u>Prater v. Dahm</u> and <u>Rich v. Bruce</u>, a reasonable corrections officer under the same circumstances would have believed that he was not violating Plaintiff's constitutional rights by investigating his complaints. The circumstances in this case make it singularly appropriate for application of the defense of qualified immunity. Corrections officers should not be held liable when their conduct at least comports with the conduct that courts found in <u>Prater</u> and <u>Rich</u> was not deliberately indifferent.

13

**Miles was also entitled to qualified immunity and the District Court erred in denying his motion for summary judgment.**

In addition to the foregoing law when determining whether a constitutional violation occurred in the context of this case, liability attaches when (1) the evidence reveals that an official subjectively recognized a substantial risk of harm and (2) "the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" Parrish v. Cleveland, 372 F.3d 294, 301, quoting Rich, supra, 129 F.3d at 340 n. 2. As this Court further explained, "…it is not enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient." Id. citing to Brown v. Harris, 240 F.3d 383, 390-91 (4th Cir. 2001).

As it did with the other Defendants, the District Court also erred in analyzing the constitutional violation prong of the qualified immunity test as it applied the test to Miles. In analyzing this prong of the qualified immunity test for Miles, it is important that Miles' actions be viewed through the prism of Miles' status at the time this incident occurred. On April 11, 2011, Miles was a trainee with three and a half months of experience on the job, with no formal educational training as a correctional officer. Unlike the other Defendants, Miles was not a certified officer. With this in mind, we turn to the two times Miles is alleged to have interacted with Cox on April 11, 2011.

14

Miles first spoke to Cox the morning of April 11, 2011 when he and certified correctional officers Quinn, Baxley, and Pinkerman met with Cox about potential issues involving other inmates in the pod. Miles reiterates that there is no evidence in this case or case law in general that supports a bright line rule that deems the only acceptable response under these circumstances is for correctional officers to remove inmates who say they are threatened by other inmates from their housing assignments. Such a bright line rule would in fact be unworkable and potentially disruptive to the correctional setting as inmates could use such a rule to manipulate staff and housing assignments. The undisputed notion that Miles reported the potential issues with Cox to his supervisor, and that certified correctional officers then investigated the situation, is uncontroverted evidence that Miles and the other officers did not know of and disregard an excessive risk to Cox, or that they actually drew the inference Farmer requires.

According to Cox, Miles' second interaction with Cox came around evening meal time on April 11, 2011. Cox says he approached Miles with additional concerns, and that Miles simply turned and walked away. Even if that is true, Cox raises no evidence that Miles was actually aware that his conduct at that time was inappropriate. The undisputed evidence only permits the opposite conclusion. When Cox allegedly approached Miles around dinner, it is not in conflict that Miles (1) had earlier in the day reported potential issues with Cox to his supervisor,

15

(2) knew certified correctional officers investigated Cox's allegations, (3) was under the impression everything was alright, and (4) completed regular rounds throughout the day and saw nothing that was a danger. Those unchallenged facts, coupled with the unopposed reality that Miles was a non-certified officer with very little job experience, only permits a finding that Miles was not deliberately indifferent, nor did he actually draw the inference of a risk of harm to Cox at the time.

Even if the District Court correctly concluded Miles committed a constitutional violation, it erred when it applied the second prong of the Saucier test, that is, whether it would be clear to a reasonable, non-certified correctional officer that his conduct was unlawful in the situation he confronted. The District Court's conclusion that the right at issue here was whether a reasonable officer knew he had to protect prisoners from violence was far too generalized. Whether the right at issue was clearly established requires a more specific analysis for the two times Miles spoke with Cox on April 11, 2011.

When Miles first interacted with Cox in the morning of April 11, 2011, the issue in determining whether the right at issue was clearly established was whether a reasonable non-certified correctional officer under the same circumstances would have believed that notifying his supervisor of potential issues with Cox, and then relying on certified correctional officers to investigate the matter, violated Cox's

16

constitutional rights. Cox does not offer anything to contradict that after the morning meeting with Cox, Miles notified his supervisor, an investigation ensued, and the officers emerged with a feeling that everything would be fine from that point on. With no bright line rule on the issue and Miles' status as a trainee with little to no experience, it is not in dispute that Miles believed that his actions after the morning exchange with Cox were lawful.

When Cox allegedly contacted Miles for a second time around evening meals on April 11, 2011, the correct inquiry is whether a reasonable non-certified correctional officer under the same circumstances would have believed that failing to address Cox's comments violated Cox's constitutional rights. Again, this interplay with Cox cannot be viewed in a vacuum. Miles was still a trainee with three and a half months of experience and no formal education that would have made him a certified officer. When Miles saw Cox this second time, Miles had the benefit of the following knowledge: (1) he reported Cox's concerns to a supervisor earlier in the day, (2) certified correctional officers investigated Cox's claims, (3) the officers emerged with a feeling all would be fine within the pod going forward, and (4) Miles saw nothing during walk-throughs the rest of the day that caused him concern. Cox does not contradict that evidence. Qualified immunity exists to protect officers that use their discretion based on facts and circumstances they perceive at the time they act. The same law that has protected officers deemed lazy

17

and stupid also protects the inexperienced officers that had multiple reasons to conclude there was nothing to an inmate's complaint based on a totality of the circumstances at the time it was received. As a result, Miles is entitled to qualified immunity.[3]

## **CONCLUSION**

For the foregoing reasons, the Appellants respectfully ask this Court to reverse the District Court's denial of summary judgment and grant them summary judgment on the basis of qualified immunity and the Plaintiff's Amended Complaint and suit against the Defendants be dismissed with prejudice.

## **REQUEST FOR ORAL ARGUMENT**

Appellants respectfully request that this Court hear oral argument in this matter and state that such argument should be permitted to clarify the legal issues and facts in this case.

---

[3] The District Court entertained oral argument on March 6, 2015. JA 402-45. The Court then provided the parties opportunity to address this Court's intervening decision in Makdessi v. Fields, 789 F.3d 126 (4th Cir. 2015).

18

OFFICER BRADLEY QUINN,
OFFICER JOSHUA PINKERMAN, AND
OFFICER BENJAMIN BAXLEY

By /s/ Jim H. Guynn, Jr.
Jim H. Guynn, Jr.
Virginia bar number 22299
Attorney for Defendants Quinn, Pinkerman
and Baxley
Guynn & Waddell, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:    540-389-2350
Email:  jimg@guynnwaddell.com


JUSTIN MILES

By /s/ Christopher C. Newton
John C. Johnson
Virginia bar number 33133
Christopher C. Newton
Virginia bar number 77135
Attorney for Defendant Justin Miles
Frith Anderson & Peake, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540-772-4600
Fax:    504-772-9167
Email: jjohnson@faplawfirm.com
        cnewton@faplawfirm.com

19

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief has been prepared using

<u>X</u>     Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times New Roman, NOT sans serif typeface such as Arial).  Specify software name and version, typeface name, and point size below (for example, WordPerfect 8, CG Times, 14 point):

<u>Microsoft Word 2010, Times New Roman, 14 point</u>

2.     EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules or regulations, and the certificate of service,

<u>This brief contains 4,326 words</u>

I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the work or line print-out.

<u>/s/ Jim H. Guynn, Jr.</u>
Jim H. Guynn, Jr.

20

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 17, 2015, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below.

OFFICER BRADLEY QUINN,
OFFICER JOSHUA PINKERMAN, AND
OFFICER BENJAMIN BAXLEY

By <u>/s/ Jim H. Guynn, Jr.</u>
Jim H. Guynn, Jr.
Virginia bar number 22299
Attorney for Defendants Quinn, Pinkerman and Baxley
Guynn & Waddell, P.C.
415 S. College Avenue
Salem, Virginia  24153
Phone: 540-387-2320
Fax:    540-389-2350
Email:  jimg@guynnwaddell.com

JUSTIN MILES

By <u>/s/ Christopher C. Newton</u>
John C. Johnson
Virginia bar number 33133
Christopher C. Newton
Virginia bar number 77135
Attorney for Defendant Justin Miles
Frith Anderson & Peake, P.C.
29 Franklin Road, SW
P.O. Box 1240
Roanoke, Virginia 24006-1240
Phone: 540-772-4600
Fax:    504-772-9167
Email: jjohnson@faplawfirm.com
        cnewton@faplawfirm.com

21